# IN THE CHANCERY COURT FOR THE STATE OF TENNESSEE
## TWENTIETH JUDICIAL DISTRICT, DAVIDSON COUNTY, PART II

| | |
|---|---|
| **JEFFREY WAYNE HUGHES,** | ) |
| Petitioner, | ) |
| v. | ) No. 21-618-II |
| **TENNESSEE BOARD OF PAROLE,** | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

The Petitioner, Jeffrey Wayne Hughes, is an inmate in the custody of the Tennessee Department of Correction ("TDOC") residing at the Bledsoe County Correctional Complex in Pikeville, Tennessee. Mr. Hughes filed this action seeking certiorari review of the Tennessee Board of Parole's ("the Board") decision to deny him a parole hearing contemporaneously with his release eligibility date.

In addition to the Petition, pending before the Court is the Board's Motion to Dismiss pursuant to Rule 12.02(1) for lack of subject matter jurisdiction. For the reasons set out herein, that motion is DENIED.

Having reviewed the pleadings, the administrative record, the applicable law and the arguments of the parties, the Court is now ready to rule on the Petition.

### BACKGROUND

Mr. Hughes' criminal conviction originated from a 2016 plea deal that resulted in a twenty-seven (27) year sentence:

> On October 24, 2016, the defendant pled guilty to one count of theft over $250,000 from victim Lawrence County Fire and Rescue, Inc. ("Lawrence County Fire and Rescue"), one count of theft between $10,000 and $60,000 from victim Crossroads Volunteer Fire Department ("Crossroads"), and six counts of money laundering. The State agreed to dismiss eighty-one additional counts of money laundering as

part of the plea agreement. The offenses occurred between 2009 and 2016, while the defendant served as the volunteer treasurer for both Lawrence County Fire and Rescue and Crossroads. During this time period, the defendant was employed by the Tennessee Department of Correction as a fiscal director, for which he earned $5,870 monthly.

*State v. Hughes*, No. M2017-00057-CCA-R3-CD, 2018 WL 317015, at *1 (Tenn. Crim App. Jan. 8, 2018). The additional details regarding the subject offenses, Mr. Hughes' appeal of the imposed sentence and denial of probation on the money laundering counts, are set out in the Court of Criminal Appeals' decision cited above.

On July 22, 2020, Mr. Hughes appeared before the Board for an initial parole hearing prior to his release eligibility date. Despite Mr. Hughes having submitted substantial materials to support his request, the Board denied parole and set the next parole hearing two years out—in July of 2022.

During the 2021 legislative session, the General Assembly enacted the Reentry Success Act of 2021, TN LEGIS 410 (201), 2021 Tennessee Laws Pub. Ch. 410 (H.B. 785) (the "Act"). As comprehensive reform legislation, the Act resulted in numerous changes to the Tennessee Code in Chapters 40 and 41 regarding criminal procedure and correctional institutions and inmates; in particular, the Act overhauled parole determinations and eligibility. The Act was signed into law on May 12, 2021 and became effective a few months later on July 1, 2021. As it relates to this case, the Act addresses parole eligibility and amends Tenn. Code Ann. § 40-35-503 addressing "Authority to determine release status of felon – Grounds for denying release status – Hearings – Parole potential." Mr. Hughes seeks relief from this Court pursuant to this provision of the Act.

Tenn. Code Ann. § 40-35-503 was amended by the addition of subsections (i) and (j):

(i)     (1) Notwithstanding subsection (b), there is a presumption that an eligible inmate must be released on parole, except for good cause shown, upon the inmate reaching the inmate's release eligibility date or any subsequent parole hearing.

2

(2) For purposes of this subsection (i), "eligible inmate" means an inmate who:

    (A)(i) Is currently serving a sentence for a Class E or Class D felony offense; or

        (ii) Is currently serving a sentence for a felony that is not classified as a violent offense under § 40-35-120(b);

    (B) Is determined to be low risk to reoffend or most appropriately supervised in the community under the most recent validated risk and needs assessment performed under § 41-1-126;

    (C) Has successfully completed the programming recommended by the department of correction based on a validated risk and needs assessment performed under § 41-1-126, or can complete any recommended programming while on parole supervision;

    (D) Has not received a Class A or Class B disciplinary offense under department of correction policy within one (1) year of the inmate's parole hearing; and

    (E) Has not been convicted of a violent sexual offense, as defined in § 40-39-202; sexual offense, as defined in § 40-24-108(b) or § 40-39-202; or sex offense, as defined in § 39-13-703.

(3) This subsection (i) does not eliminate or otherwise affect the requirements of subsection (c) or § 40-28-116(a)(2).

(j) Upon declining to grant parole in any case, the board must state in writing the reason for declining parole and how the inmate can improve the inmate's chance of being released on parole in the future.

On June 21, 2021, Mr. Hughes submitted a "Petition of Mr. Jeffrey Wayne Hughes, TDOC #00571879, For Compliance With The Reentry Success Act of 2021 And To Enable Him To Exercise His Rights Under The Reentry Success Act of 2021 At A Meaningful Time And In A Meaningful Manner," seeking a parole hearing date prior to his upcoming release eligibly date. (R. 149). Among the materials included with that petition was an e-mail exchange between Mr. Hughes' counsel and the Board's counsel identifying Mr. Hughes' release eligibility date as

3

sometime in the fall of 2021. (R. 196). In response to the request for a new parole hearing date, the Board's counsel provided:

> The Reentry Success Act applies to parole determinations made on or after the effective date. It does not retroactively apply such that the Board must rehear the thousands of offenders that were previously heard and declined but may be eligible under the Act upon reaching their review dates. Unfortunately, the Board does not have the ability or resources necessary to identify and reconsider all of those cases including Mr. Hughes.

(R. 195).

Two days later, on June 23, 2021, Mr. Hughes, through counsel, appeared before the Board during its administrative meeting and requested that the Board "afford Mr. Hughes a parole hearing before his release eligibility date in compliance with the new Reentry Success Act of 2021." The Board did not act on the matter at that time and does not intend to meet again until January 26, 2022. (R. 1-20). It is this action from which Mr. Hughes has filed the Petition with this Court.

## MOTION TO DISMISS

In its Motion to Dismiss, the Board contends that Mr. Hughes is appealing its parole denial from July 22, 2020, and that the Petition is untimely pursuant to the sixty (60) day filing requirement set forth in Tenn. Code Ann. § 27-9-102. However, the Court agrees with Mr. Hughes that the decision being appealed is *not* the Board's July 22, 2020 parole denial, but rather the Board's June 23, 2021 decision not to act on his petition to set a parole hearing pursuant to his interpretation of the Act. The Petition was verified and filed on July 1, 2021, within the requisite sixty (60) day window required by Tenn. Code Ann. § 27-9-102 from the June 23, 2021 Board of Parole meeting. As such, the Petition was timely filed and meets the requirements of Tenn. Code Ann. § 27-9-102.

4

**SCOPE OF REVIEW**

A prisoner may seek review of decisions by parole eligibility review boards via the common law writ of certiorari. *Willis v. Tennessee Dept. of Correction,* 113 S.W.3d 706, 712 (Tenn. 2003). By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief. *Id.* Tennessee Code Annotated § 27–8–101 sets forth the purpose of judicial review by a common law writ of certiorari:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

The scope of review available through the common law writ of certiorari is limited. *State ex rel. Moore & Assocs., Inc. v. West,* 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005). The court is charged with determining whether the decision maker (1) exceeded its jurisdiction, (2) followed an unlawful procedure, (3) acted illegally, arbitrarily, or fraudulently, or (4) acted without material evidence to support its decision. *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.,* 222 S.W.3d 359, 363 (Tenn. 2007); *see also Stewart v. Schofield,* 368 S.W.3d 457, 463 (Tenn. 2012). A reviewing court may not (a) inquire into the intrinsic correctness of the lower tribunal's decision, *Arnold v. Tennessee Bd. of Paroles,* 956 S.W.2d 478, 480 (Tenn. 1997); *Powell v. Parole Eligibility Rev. Bd.,* 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994); (b) reweigh the evidence, *Watts v. Civil Serv. Bd. for Colum.,* 606 S.W.2d 274, 277 (Tenn. 1980); *Hoover, Inc. v. Metro Bd. of Zoning App.,* 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); or (c) substitute its judgment for that of the lower tribunal, *421 Corp. v. Metropolitan Gov't of Nashville,* 36 S.W.3d 469, 474 (Tenn. Ct. App. 2000). If "any possible reason" exists to justify an action challenged by the common law writ of certiorari, the action will be upheld. *Abbington Center, LLC v. Town of Collierville*, 393 S.W.3d 170, 175-76 (Tenn. Ct. App. 2012) (quoting *McCallen v. City of*

*Memphis,* 786 S.W.2d 633, 641 (Tenn. 1990)). A court may not overturn a parole decision if it has been made according to law. Tenn. Code Ann. § 40-28-115(c); *Flowers v. Traughber,* 910 S.W.2d 468, 470 (Tenn. Crim. App. 1995).

## ANALYSIS

Mr. Hughes contends that the Board acted arbitrarily, capriciously, and illegally in failing to follow the Act and denying him the opportunity to have a parole hearing date within a reasonable time of his upcoming parole eligibility date. Thus, Mr. Hughes' petition rises and falls upon the interpretation of the Act as codified at Tenn. Code Ann. § 40-35-503(i) and (j), and, specifically, whether the change in the parole eligibility process requires the Board to set a parole hearing consistent with an inmate's release eligibility date. The Board takes the position it is not required to set a new parole hearing date, but rather can wait until the next scheduled parole review to consider release eligibility pursuant to the requirements set forth in the Act. Further, the Board argues that the petition seeks retroactive application of the Act to a prior parole decision, not a new parole eligibility decision. To do so, it asserts, would intrude upon the Board's authority and be an inappropriate substitution of the Court's judgment for that of the Board. *See Phifer v. Tenn. Bd. of Parole*, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at *3 (Tenn. Ct. App. Nov. 1, 2002). If the petition were seeking for the Court to overturn the Board's parole denial for Mr. Hughes on July 22, 2020, that would indeed be an inappropriate retroactive application of the Act through a vehicle – the writ of certiorari – not available because of the timing of its filing. That is not, however, how the Court interprets the petition or the relief sought therein. Rather, the petition seeks a review of the Board's action, or lack thereof, at the June 23, 2021 meeting when asked to set a parole hearing for Mr. Hughes consistent with his release eligibility date.

In reviewing the Board's action, and evaluating the reason for its inaction, there is little in the record other than the e-mail communication between the Board's counsel and Mr. Hughes' counsel in anticipation of the Board's meeting, which is quoted above. The Board has consistently taken the position that a request for a new parole hearing date is equivalent to a request for retroactive application of the Act to the prior parole denial. That is not, however, the Court's understanding of the relief requested; thus, the Court is unclear upon what basis the Board is denying a request for a new hearing other than its limited "ability or resources" to do so for everyone the Act may affect. While the Court is sympathetic to this concern, this does not excuse the State from appropriately and consistently applying the Act to eligible inmates.

The Court is tasked with interpreting certain provisions of the Act. The Tennessee Supreme Court in *Womack v. Corr. Corp. of Am.*, 448 S.W.3d 362, 366 (Tenn. 2014) sets forth the standard for such an analysis:

> [The] analysis naturally begins with the words used in the statute. *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d at 420 (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)). The words "must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). We presume that every word in the statute has meaning and purpose and should be given full effect unless the obvious intention of the General Assembly indicates otherwise. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012); *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without adopting a forced interpretation. *Baker v. State*, 417 S.W.3d at 433; *Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 524 (Tenn. 2011); *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

Tenn. Code Ann. § 40-35-503(i)(1), set forth above, states:

Notwithstanding subsection (b), there is a presumption that an eligible inmate must be released on parole, except for good cause shown, upon the inmate reaching the inmate's release eligibility date or any subsequent parole hearing.

Subsection (b) provides that "parole is a privilege and not a right" as quoted in *Brennan v. Board of Parole for Tennessee*, 512 S.W.3d 871, 873 (Tenn. 2017), which has been the standard applied by Tennessee courts reviewing appeals of parole-related decisions *until the passage of the Act*. The General Assembly has changed that presumption with the amendment to Tenn. Code Ann. § 40-35-503 and addition of subsection (i) through the Act.[1] The Court's interpretation of the plain meaning of this language is that an eligible inmate is entitled to parole consideration *upon* reaching his or her release eligibility date. This is consistent with the requirement that statutory interpretation "naturally begins with the words used in the statute." *Womack v. Corrections Corp. of Amer.*, 448 S.W.3d 362, 366 (Tenn. 2014) (citing, *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 420 (Tenn. 2013); s*ee also Wallace v. Metro. Gov't of Nashville,* 546 S.W.3d 47, 52 (Tenn. 2018).

The Court appreciates the Board's concern that Mr. Hughes' interpretation of the applicable provision of the Act will require it to set hearings for inmates who have upcoming release eligibility dates outside of the ordinary course of the hearing schedule, but not to do so would result in inconsistent and arbitrary application. Indeed, some inmates would immediately benefit because their scheduled hearing happens to coincide with a newly arising release eligibility date, while others would remain incarcerated well beyond that date because of administrative inconvenience. Respectfully, that is inconsistent with all principles of due process and of the obligation of the State to "'follow the laws of the State of Tennessee as well as its own rules, and that inmates are entitled to whatever due process arises as a result of the proper application of state

---

[1] Petitioner points out that the applicable regulations do not reflect this change. The last amendments were made on March 22, 2020. Tenn. Comp. R. & Regs. 1100-01-01 (administrative history). They are, indeed, out of date and do not reflect the changes to the parole system made through the Act. Thus, any reliance on them as authority for the Court, if inconsistent with the Act, would be misplaced.

8

statutes and the rules.'" *Greenwood v. Tenn. Bd. of Parole,* 547 S.W.3d 207, 214-15 (Tenn. Ct. App. 2017) (*quoting Wells v. Tenn. Bd. of Paroles*, 909 S.W.2d 826, 829 (Tenn. Ct. App. 1995)).

The Act constitutes a sea change in how parole matters are to be handled in Tennessee *for eligible inmates.* There is a significant population of incarcerated individuals who will not meet the extensive requirements set out in Tennessee Code Annotated § 40-35-503(i). But for those who do, they are entitled to a parole hearing within a reasonable time of their release eligibility date, as well as a presumption of parole release except for good cause shown, which must be reduced to writing with an explanation regarding what the inmate can do to improve his or her chances. Tenn. Code Ann. § 40-35-503(i) & (j). "An administrative decision may be found to be illegal, arbitrary or fraudulent . . . where the standards of due process have not been met, where a constitutional or statutory provision has been violated, or where some unlawful procedure has been followed." *Livingston v. State of Tennessee Bd. of Paroles*, No. M199901138COAR3CV, 2001 WL 747643, at *8 (Tenn. Ct. App. July 5, 2001) (citing *Harless v. City of Kingsport*, No. 03A01-9707-CH-00289, 1998 WL 131519, at *4-5 (Tenn. Ct. App. Mar. 25, 1998)). Thus, the Court finds that the Board failed to adhere to the requirement of the Act, codified at Tenn. Code Ann. § 40-35-503(i) and (j), when it denied Mr. Hughes' June 23, 2021 request for a parole hearing earlier than July of 2022 and in reasonable proximity to his release eligibility date. The Board's action denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.

The Court declines to grant Mr. Hughes' preferred relief – that it make an independent determination of parole eligibility based upon the administrative record and an application of the relevant factors set out in the Act. If it were to do so, it would be exceeding its authority as set out in Tenn. Code Ann. § 27-9-101 *et seq*. It will, however, remand this matter to the Board with

instructions that it determine Mr. Hughes' release eligibility date and set a parole hearing within sixty (60) days of that date.

It is, therefore, ORDERED, ADJUDGED and DECREED that the Board's Motion to Dismiss is DENIED.

It is further ORDERED, ADJUDGED and DECREED that Mr. Hughes' petition is GRANTED and this matter is REMANDED to the Board of Parole with instructions to DETERMINE his release eligibility date and SET A PAROLE HEARING within sixty (60) days of that date.

Costs are taxed to the Board of Parole.

**It is so ORDERED.**

*s/Anne C. Martin*
**ANNE C. MARTIN**
**CHANCELLOR, PART II**


Cc:    Daniel A. Horwitz, Esq.
Lindsay B. Smith, Esq.
Horwitz Law, PLLC
4016 Westlawn Drive
Nashville, TN  37209
daniel@horwitz.law
lindsay@horwitz.law

Pamela S. Lorch, Esq.
Office of the Attorney General & Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
pam.lorch@ag.tn.gov

**RULE 58 CERTIFICATION**

A copy of this order has been served by U.S. Mail upon all parties or their counsel named above.

    <u>s/Megan Broadnax</u>         <u>9-24-21</u>
Deputy Clerk and Master         Date
Chancery Court