## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| JEFFREY HUGHES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:22-cv-00238 |
| | ) | |
| ZANE DUNCAN, GARY M. FAULCON, | ) | **Chief Judge Crenshaw** |
| TIM GOBBLE, MAE BEAVERS, | ) | **Magistrate Judge Frensley** |
| ROBERTA NEVIL KUSTOFF, and | ) | |
| BARRETT RICH, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Zane Duncan, Gary M. Faulcon, Tim Gobble, Mae Beavers, Roberta Nevil Kustoff, and Barrett Rich ("Defendants")—all of whom are members of the Tennessee Board of Parole (the "Board")—submit this memorandum of law in support of their motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The complaint should be dismissed. First, Defendants are absolutely immune from Plaintiff's claim that, as part of their duties as members of the Board, they violated his right to due process when the Board declined to reschedule his parole hearing date after passage of the Reentry Success Act. Second, even if *absolute* immunity did not apply, Defendants are entitled to qualified immunity because it was not clearly established that the Reentry Success Act or due process required the Board to reschedule Plaintiff's hearing date. Third, the complaint contains essentially

no allegations of any individual actions of Defendants and therefore fails, irrespective of Defendants' immunity, to state a claim for relief.

<center>**BACKGROUND**[1]</center>

Plaintiff brings a due process claim under 42 U.S.C. § 1983 (D.E. 1, PageID# 4, ¶ 13), alleging that the Board denied "Mr. Hughes' presumptive statutory right to be released on parole upon reaching his September 30, 2021 release eligibility date" because the Board "did not afford Mr. Hughes a hearing under the provisions of the Reentry Success Act of 2021 until November 29, 2021." (*Id.* at PageID# 2, ¶ 4.) Plaintiff seeks to recover $1 million in damages against the individual Board members. (D.E. 1, PageID# 12.)

**I.** **The Reentry Success Act Changed the Board of Parole's Parameters for Granting Parole to Certain Eligible Inmates.**

Under state law, the Board has considerable discretion to deny parole to a release-eligible inmate. For example, the Board is not required to grant parole when it finds "a substantial risk that the incarcerated individual will not conform to the conditions of the release program," or, for inmates convicted of certain grievous offenses, if release "would depreciate the seriousness of the crime of which the incarcerated individual stands convicted or promote disrespect for the law." *See* Tenn. Code Ann. § 40-35-503(b).

But in 2019, the General Assembly cabined the Board's discretion to deny parole to certain eligible inmates. 2019 Tenn. Pub. Acts, ch. 488, § 2; Tenn. Code Ann. § 40-35-503(h) (2020). That year, the Legislature created "a presumption that an inmate convicted of a Class E or Class D nonviolent felony offense, as defined in § 40-36-102,[2] is to be released on parole upon the

---

[1] The facts recited below are based solely on Plaintiff's complaint, and Defendants assume that all of Plaintiff's factual allegations are true only for the purposes of a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[2] The Reentry Success Act changed the definition of "nonviolent felony offense" in § 40-35-503(h).

<center>2</center>

inmate reaching the inmate's release eligibility date unless good cause is shown as to why the inmate should not be released." *Id*.

Two years later, the Reentry Success Act broadened the class of inmates who are eligible for a presumption of release. 2021 Tenn. Pub. Acts, ch. 410, § 12; Tenn. Code Ann. § 40-35-503(i)(1) ("[T]here is a presumption that an eligible inmate must be released on parole, except for good cause shown, upon the inmate's release eligibility date or any subsequent parole hearing."). Under current law, the presumption applies to inmates who committed any nonviolent felony or any Class E or D felonies (even if they were violent), so long as the inmates meet risk parameters, have completed recommended programming, have not received a recent Class A or B disciplinary offense, and were not convicted of certain sexual offenses.[3] Tenn. Code Ann. § 40-35-503(i)(2).

## II. Plaintiff Requests that the Board Reschedule His Parole Board Hearing After the Reentry Success Act Took Effect.

Plaintiff pleaded guilty to one count of theft over $250,000 from Lawrence County Fire and Rescue, Inc., one count of theft over $10,000 from Crossroads Volunteer Fire Department, and six counts of money laundering. (D.E. 1-2, PageID# 14-15); *State v. Hughes*, No. M2017-

---

[3] Specifically, the parameters are set out in the statute as follows:
> (B) Is determined to be low risk to reoffend or most appropriately supervised in the community under the most recent validated risk and needs assessment performed under § 41-1-126;
> (C) Has successfully completed the programming recommended by the department of correction based on a validated risk and needs assessment performed under § 41-1-126, or can complete any recommended programming while on parole supervision;
> (D) Has not received a Class A or Class B disciplinary offense under department of correction policy within one (1) year of the inmate's parole hearing; and
> (E) Has not been convicted of a violent sexual offense, as defined in § 40-39-202; sexual offense, as defined in § 40-24-108(b) or § 40-39-202; or sex offense, as defined in § 39-13-703.

Tenn. Code Ann. § 40-35-503(i)(2).

00057-CCA-R3-CD, 2018 WL 317015, at *1 (Tenn. Crim. App. Jan. 8, 2018). The State dismissed 81 additional counts of money laundering, and Plaintiff received a 27-year effective sentence. (D.E. 1-2, PageID# 14-15.)

Plaintiff's release eligibility date ("RED") was some time in the fall of 2021.[4] (D.E. 1-2, PageID# 16-17); *see also* D.E. 1-4, PageID# 28 (holding that as of September 28, 2021, Plaintiff's RED was September 30, 2021)). On July 22, 2020, the Board conducted an initial parole hearing prior to Plaintiff's RED in the fall of 2021. (D.E. 1-2, PageID# 15.) The Board denied parole and set the next hearing for July 2022. (D.E. 1-2, PageID# 15.)

Almost a year after that initial parole hearing, the Reentry Success Act went into effect on July 1, 2021. Eleven days before the Act's effective date, Plaintiff submitted a petition to the Board seeking another parole hearing date before Plaintiff's RED in the fall of 2021. (D.E. 1-2, PageID# 16.) He included a copy of an email correspondence with the Board's counsel explaining why Plaintiff's hearing would not be rescheduled:

> The Reentry Success Act applies to parole determinations made on or after the effective date. It does not retroactively apply such that the Board must rehear the thousands of offenders that were previously heard and declined but may be eligible under the Act upon reaching their review dates. Unfortunately, the Board does not have the ability or resources necessary to identify and reconsider all of those cases including [Plaintiff].

(D.E. 1-2, PageID# 17.) Two days after submitting his petition, Plaintiff's counsel appeared at an administrative meeting of the Board and requested that the Board schedule another parole hearing before the fall of 2021. (D.E. 1-2, PageID# 17.) The Board did not act on Plaintiff's request at the meeting. (D.E. 1-2, PageID# 17.)

---

[4] A release eligibility date is "the earliest date an inmate convicted of a felony is eligible for parole." Tenn. Code Ann. § 40-35-501(n). The RED may vary over time because it is "conditioned on the inmate's good behavior while in prison' and may be deferred pursuant to regulations promulgated by the Department of Correction, or because of an inmate's custody classification. *See* Tenn. Code Ann. §§ 40-35-501(n), -501(o).

Plaintiff challenged the Board's decision not to reschedule the July 2022 hearing in a petition for writ of certiorari filed in Davidson County Chancery Court. (D.E. 1-2, PageID# 14, 17.) The chancery court held that the Reentry Success Act required the Board to grant Plaintiff's request for a hearing earlier than July 2022 and "in reasonable proximity to his [RED]." (D.E. 1-2, PageID# 22.) The chancery court remanded the matter for the Board to determine Plaintiff's RED and to conduct a hearing within 60 days of that date. (D.E. 1-2, PageID# 22-23.) Acting on the Court's order, the Board held a hearing, voted to approve Plaintiff's release on parole, and issued a parole certificate certifying Mr. Hughes eligibility for release; Plaintiff was then released on parole. (D.E. 1, ¶¶ 3-4, 35; D.E. 1-7.)

Plaintiff now seeks over $1 million in damages under 42 U.S.C § 1983 from Board members Zane Duncan, Gary M. Faulcon, Tim Gobble, Mae Beavers, Roberta Nevil Kustoff, and Barrett Rich. (*See, generally,* D.E. 1.) Plaintiff seeks to recover against the Board members in their individual capacities. (D.E. 1, PageID# 12.)

## STANDARD OF REVIEW

When considering a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept [the plaintiff's] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must raise more than a "possibility that a defendant has acted unlawfully";

there must be sufficient factual allegations to render the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Wesley*, 779 F.3d at 429. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In the context of a motion to dismiss a claim brought under 42 U.S.C. § 1983, "the plaintiff must allege two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz*, 592 F.3d at 722.

At the motion-to-dismiss stage, a court "may consider 'other materials that are attached to the complaint or referred to therein, are public records, or are otherwise appropriate for the taking of judicial notice.'" *Hancock v. Miller*, 852 F. App'x 914, 919-20 (6th Cir. 2021) (quoting *Wyser-Pratte Mgmt. Co. v. Telxon Corp*., 413 F.3d 553, 560 (6th Cir. 2005)). Further, the Court can take "judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty." *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012).

## ARGUMENT

I.  **Members of the Board are Entitled to Absolute Judicial Immunity from Money Damages, Including Against Allegations Related to the Setting of a Hearing to Determine an Inmate's Parole Eligibility.**

The chancery court determined that Plaintiff was entitled to a new parole hearing pursuant to the newly enacted Reentry Success Act, effective July 1, 2021. Plaintiff received a hearing and has been released from custody. (D.E. 1, ¶¶ 3-4, 35; D.E. 1-7.) Now Plaintiff seeks monetary recovery from individual members of the Board. Plaintiff's suit must be dismissed because federal courts, including the Sixth Circuit, have repeatedly held that parole board members are entitled to absolute immunity from suit for damages.

6

## A. Courts routinely find that parole board members are entitled to absolute immunity.

The doctrine of absolute immunity evolved from common law and traditionally served to shield judges from liability for money damages when performing acts committed within their discretion. *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409 (1976). In 1976, the Supreme Court extended the doctrine of absolute immunity to protect state prosecuting officers, such as district attorneys, finding that the tradition of "immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties. These include . . . the possibility that [the prosecutor] would shade his decision instead of exercising the independence of judgement required by his public trust." *Id.* at 422-23. In *Imbler,* the Supreme Court acknowledged that "[it] remains to delineate the boundaries of our holding" and left open the question of whether absolute immunity may extend further than judges and prosecutors to other public officials whose challenged activities are an "integral part of the judicial process." *Id.* at 430 (citations omitted).

Since 1976, courts around the country have extended the doctrine of absolute immunity to protect various public officers performing an integral function associated with the judicial process. *See, e.g.*, *Frazier v. Bailey*, 957 F.2d 920, n.12 (1st Cir. 1992) (collecting cases demonstrating that it is "well-established that *public officers* possess absolute immunity for activities that are intimately associated with the judicial process," which include administrative hearing officers and social workers, among others (emphasis in original)). To that end, every Circuit Court of Appeal, excepting the D.C. and Federal Circuits,[5] has routinely held that parole board members perform

---

[5] The Federal Circuit has understandably not addressed this question because it would not have jurisdiction over a Section 1983 action putting the issue of absolute immunity in contest. *See* 28 U.S.C. § 1295. And in the D.C. Circuit, both the District Court for the District of Columbia and the District of Columbia Court of Appeals have applied absolute immunity to parole board

just such an integral function and are entitled to absolute immunity. *See, e.g.*, *Tobey v. Chibucos*, 890 F.3d 634, 650 (7th Cir. 2018); *Figg v. Russell*, 433 F.3d 593, 598 (8th Cir. 2006); *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005); *Montero v. Travis*, 171 F.3d 757, 760-61 (2nd Cir. 1999); *Russ v. Upah*, 972 F.2d 300, 303 (10th Cir. 1992); *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir. 1991); *Thompson v. Duke*, 882 F.2d 1180, 1184-85 (7th Cir. 1989); *Johnson v. Kegans*, 870 F.2d 992, 995-98 (5th Cir. 1989); *Johnson v. Rhode Island Parole Bd. Members*, 815 F.2d 5, 8 (1st Cir. 1987); *Thompson v. Burke*, 556 F.2d 231, 236 (3d Cir. 1977); *Pope v. Chew*, 521 F.2d 400, 405-06 (4th Cir. 1975).

The Sixth Circuit has joined this unanimous chorus and routinely holds that parole board members are entitled to absolute immunity. *See, e.g.*, *Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (dismissing suit against individual board members because "parole board members are absolutely immune from liability for their conduct in individual parole decisions when they are exercising their decision making powers." (citing *Walter v. Torres*, 917 F.2d 1379, 1384 (5th Cir. 1990)); *Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (finding that "complaint lacked an arguable basis in law and was frivolous because none of the defendants are subject to suit" including because "parole supervisors and agents are entitled to absolute immunity"); *Tillman v. Price*, 113 F.3d 1236 (Table), 1997 WL 225993, at *1 (6th Cir. May 5, 1997) ("As a parole board member who was sued in her individual capacity, the defendant has absolute immunity from suit for monetary damages for certain acts. Among those acts is the scheduling of a hearing."); *Ward v. Moss*, 42 F.3d 1390 (Table), 1994 WL 664948, at *1 (6th Cir. 1994) ("We agree Moss is entitled to absolute immunity because members of a parole board have absolute immunity from damages

---

members. *See Pate v. U.S.*, 277 F. Supp. 2d 1 (D.D.C. 2003); *Cunningham v. District of Columbia*, 584 A.2d 573, 577 (D.C. 1990).

liability for actions taken in the performance of their duties."); *Howard v. Hughes*, 876 F.2d 894 (Table), 1989 WL 63330, at *1 (6th Cir. June 14, 1989) ("members of state parole boards have been found to enjoy absolute immunity from suit for damages under § 1983"); *Murray v. Miller*, 891 F.2d 291 (Table), 1989 WL 149987, at *1 (6th Cir. Dec. 12, 1989) ("Individual members of state boards uniformly have been found to have absolute immunity from suit for damages").

Unsurprisingly, in keeping with this precedent, courts in this District regularly dismiss suits against parole board members. *See, e.g., Wortman v. Tennessee*, No. 3:20-cv-00156, 2020 WL 1666601, at *3 (M.D. Tenn. Apr. 3, 2020); *Butler v. Haslam*, 2019 WL 2327523, at*6 (M.D. Tenn., May 30, 2019); *Jones v. Tennessee Dep't of Correction*, No. 3:20-CV-00340, 2021 WL 866487, at *8 (M.D. Tenn. Feb. 1, 2021), *report and recommendation adopted sub nom. Jones v. Tennessee Dep't of Correction*, No. 3:20-CV-0340, 2021 WL 859625 (M.D. Tenn. Mar. 8, 2021); *Haynes v. Board of Paroles Members/Chairman*, No. 3:18-cv-00441, 2018 WL 3426179, at *2 (M.D. Tenn. July 16, 2018).

**B.     The Board's decision to deny Plaintiff's request for a new hearing was an adjudicatory function.**

The scheduling of hearings is an adjudicatory function for which parole board members are absolutely immune.  In determining whether absolute immunity attaches to a particular act of an official, the Court must look to the "nature of the function performed, not the identity of the actor who performed it."  *Forrester v. White*, 484 U.S. 219, 229 (1988).  The Supreme Court therefore applies a "'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment."  *Id.* at 224.  The functional approach is meant to identify "functions that merit the protection of absolute immunity," *Rehberg v. Paulk*, 566 U.S. 356, 364 (2012), which include "judicial acts," *Forrester*, 484 U.S. at 227.

9

The Sixth Circuit considers two factors "when determining whether an act is judicial in nature, and thus protected by absolute immunity." *Dean v. Byerley*, 354 F.3d 540, 555-56 & n.11 (6th Cir. 2004) (applying the test for judges discussed in *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997) to "other public officials engaged in adjudicative functions"); *see also Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (applying a similar framework to an administrative hearing officer (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999)). First, the Court must consider whether the function is "normally performed by an adjudicator." *Dean*, 354 F.3d at 556. This functional approach examines the "nature" and "function" of the act, not the act itself. *Id.* at 555. Further, even if a particular act is not a function normally performed by an adjudicator, "the court should look to the act's relation to a general function normally performed by an adjudicator." *Id.* (citing *Barrett*, 130 F.3d at 255). Second, the court must assess whether the plaintiff dealt with the defendant in his or her "adjudicative capacity." *Id.*

When this two-factor test is applied to Plaintiff's allegations,[6] the decision to deny Plaintiff's petition for a rehearing of his parole denial is exactly the sort of adjudicatory act absolute immunity is designed to protect. Specifically, according to the documentation appended to the complaint, eleven days before the Act took effect, Plaintiff "submitted a 'Petition of Mr. Jeffrey Wayne Hughes . . .' seeking a parole hearing prior to his release eligibility date." (D.E. 1-2, PageID# 16.) The Board did not reschedule his hearing as requested. (D.E. 1, PageID# 6, ¶ 24;

---

[6] The Sixth Circuit has also attached absolute immunity to parole board members for "actions taken in the performance of [a board member's] duties" without specific reference to the two-factor test. *Ward*, 1994 WL 664948, at *1 ("Because the actions of which [plaintiff] complains were taken by [defendant] in her position as a [parole board] member, she is entitled to absolute immunity."); *see also Fleming*, 24 F. App'x at 259; *Horton*, 137 F. App'x at 775 (6th Cir. 2005). However, it has also explained that a parole board member has "absolute immunity from suit for monetary damages for certain acts . . . Among those acts is the scheduling of a hearing." *Tillman*, 1997 WL 225993, at *1 (citing *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994)).

D.E. 1-2, PageID# 17.)  Plaintiff complains that, "[b]y refusing to afford Mr. Hughes a timely parole hearing in compliance with the Reentry Success Act of 2021 prior to July 2022 . . . the Defendants summarily deprived Mr. Hughes of his protected liberty interest in parole, and they abridged Mr. Hughes' constitutionally protected due process right to a hearing." (D.E. 1, PageID# 9, ¶ 39.)

First, denying Plaintiff's request for rehearing, thereby delaying parole consideration, is the type of function normally performed by an adjudicator.  The Sixth Circuit has found, for instance, that judges—tasked with maintaining their own dockets and determining when litigants will have the opportunity to present their claims—are entitled to immunity for the "paradigmatic judicial act" of "setting dates for hearings." *See Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994).  So too must the Board manage the scheduling of hearings and determine when an inmate's release eligibility should be reviewed. *See Tillman*, 1997 WL 225993, at *1 (applying *Mann* to a parole board member's act of scheduling a hearing).

Second, Plaintiff was dealing with the Board in its adjudicative capacity.  Plaintiff's request was made to the Board in both a written petition and at a formal public meeting.  (D.E. 1-2, PageID# 16-17.)  It is also within the Board's purview to grant or deny requests for a parole hearing. Tenn. Code Ann. § 40-28-105(b) ("The board shall prescribe the times and places of its meetings and shall schedule hearings at each correctional institution or facility at times as may be necessary to discharge its duties.")  Thus, this is a case where the Board exercised its adjudicative function.

Other courts have reached the same conclusion under similar circumstances.  In *Thompson v. Duke*, the plaintiff alleged that his due process rights were violated because the defendants, individual parole board members, did not proceed with or ensure that others would proceed with

a parole hearing prior to a certain date. 882 F.2d at 1181. The Seventh Circuit, applying *Forrester*, held that scheduling a hearing is a judicial act to which absolute immunity attaches because "schedul[ing] and conduct[ing] a parole hearing . . . is obviously an integral judicial (or quasi-judicial) function."[7] *Thompson*, 882 F.2d at 1184-85. And, like the reasoning of the Seventh Circuit in *Thompson v. Duke*, the reasoning of the Eighth Circuit in *Anton v. Getty*, 78 F.3d 393, 396 (8th Cir. 1996), applies with equal force to this case. As the Eighth Circuit explained, "parole officials in deciding to grant, deny, or revoke parole performed functions comparable to those of judges" and "[defendant's] decision to delay [plaintiff's] parole . . . was no less judicial in character than are decisions to deny parole." *Id.* at 396; *accord Tillman*, 1997 WL 225993, at *1 ("As a parole board member who was sued in her individual capacity, the defendant has absolute immunity from suit for monetary damages for certain acts. Among those acts is the scheduling of a hearing.")

Plaintiff's claim falls squarely in the category of parole-board actions protected by absolute immunity. Plaintiff's complaint should be dismissed.

## II. Members of the Board Have Qualified Immunity from Plaintiff's Claim that They Violated Due Process When They Declined to Reschedule His Parole Hearing Date After Passage of the Reentry Success Act.

The Complaint should also be dismissed because qualified immunity protects Defendants from liability in performing their discretionary functions as parole board members. The Board's

---

[7] The court identified some potential consequences of a contrary ruling. It explained that adopting Plaintiff's interpretation of *Forrester* "would effectively subject judicial officers, as well as persons performing quasi-judicial functions, to unlimited litigation testing whether particular judicial functions, alleged to be mechanical or routine, were entitled to immunity from damages liability." *Thompson*, 882 F.2d at 1184-85. As an "analogous example" it pointed out that "[i]f scheduling a hearing is not a part of an adjudicatory or judicial function, then an action could be maintained against a judge for injuries to an incarcerated defendant resulting from the judge's alleged failure to schedule a hearing or trial within an applicable speedy trial limitations period, or the judge's alleged failure to conduct a hearing or trial on the date scheduled." *Id.* at 1185.

interpretation of a recently amended statute is such a discretionary function. Plaintiff has identified no controlling precedent that would have placed the issue beyond debate at the time. And Plaintiff cannot show that it was clearly established that the Reentry Success Act required the Board to hold a new parole hearing after passage of the Act, or that its refusal to do so violated due process. Because Defendants did not violate clearly established law, they are also entitled to qualified immunity, and the complaint should be dismissed.

Government officials performing discretionary functions "receive qualified immunity, which protects them 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)). "It also protects them from the cost and burdens of suit, including discovery." *Id*. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Application of qualified immunity requires the Court to consider two questions: (1) whether the allegations make out a violation of a constitutional right, and (2) whether that right was clearly established when the event occurred. *Crawford*, 15 F.4th at 762-63. The questions may be answered in any order. *Id*. at 763

Plaintiff bears the burden of overcoming qualified immunity. *Id*. The Sixth Circuit recently clarified that qualified immunity can and should be addressed at the motion-to-dismiss stage "to allow defendants to avoid pre-trial discovery where the lawsuit is 'insubstantial.'" *Id*. at 763. Unless a plaintiff's allegations state a claim that an official's conduct violated law that was clearly established at the time, "'a defendant pleading qualified immunity is entitled to dismissal

before the commencement of discovery.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

A right is only clearly established if "'a reasonable officer would have known that his conduct violated it'" at the time of the event at issue. *Id.* (quoting *Buddenberg v. Weisdack*, 939 F.3d 732, 738 (6th Cir. 2019)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. The question at issue must have been decided "by the highest state court in the state where the case arose, by a United States Court of Appeals, or by the Supreme Court." *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988). Accordingly, "a complaint distinguishable from . . . past cases on its face will not often survive a motion to dismiss on qualified immunity grounds." *Crawford*, 15 F.4th at 766.

Additionally, "'[c]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "The clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Courts must not "let a plaintiff allege rights at such a high level of abstraction that his claim always survives." *Crawford*, 15 F.4th at 765.

Here, Plaintiff claims that the Reentry Success Act required immediate reconsideration of Plaintiff's parole status and that a failure to reschedule Plaintiff's July 2022 hearing after passage of the Act violated due process. Thus, to proceed in an action against Defendants, Plaintiff must show that, in July 2021, (1) it was clearly established law that the Reentry Success Act—effective July 1, 2021—entitled Plaintiff to a rescheduled second hearing, and (2) that it was clearly established that declining to reschedule Plaintiff's parole hearing violated due process.

Plaintiff cannot establish that every reasonable officer would have been on notice that the Act required the Board to reschedule his hearing. *Crawford*, 15 F.4th at 763. The Reentry Success

Act constituted, according to the chancery court, a "sea change" in the procedures for parole. (D.E. 1-2, PageID# 22.) The Board "consistently [took] the position that a request for a new parole hearing date is equivalent to a request for retroactive application of the Act to the prior parole denial." (D.E. 1-2, PageID# 20.) The Board interpreted the Act to avoid retroactive application of Plaintiff's already adjudicated denial of parole. This position aligned with Tennessee courts' presumption that, unless the General Assembly clearly expresses an intent otherwise, statutes are not given retroactive effect. *See C-Wood Lumber Co., Inc. v. Wayne County Bank*, 233 S.W.3d 263, 282 (Tenn. Ct. App. 2007). Furthermore, the General Assembly specified in the effective date section of the Act that Section 12—the section which added the presumption of parole at issue in this case—"take[s] effect July 1, 2021, the public welfare requiring it, and *appl[ies] to parole determinations made on or after that date*." 2021 Tenn. Pub. Acts, ch. 410, § 25 (emphasis added).

In analogous situations, the Sixth Circuit has granted officers qualified immunity. For example, the Sixth Circuit has held that an officer was entitled to qualified immunity while adopting an interpretation of a statute even when that interpretation was undermined by a committee comment to the statute. *Armengau v. Cline*, 7 F. App'x 336, 346-47 (6th Cir. 2001). Because neither the state high court, nor a federal appellate court, nor the Supreme Court had addressed the question at issue in that case, the Sixth Circuit refused to "ask[] law enforcement officers to achieve a level of familiarity with the law demanded only of lawyers litigating matters implicating the statute." *Id*. at 347. In another case, the Sixth Circuit held that an officer who acted pursuant to an interpretation of a state wiretapping statute was entitled to qualified immunity, even if his interpretation was erroneous and in violation of the Fourth Amendment, because no state or federal case had interpreted or addressed the constitutionality of the statute. *Blake v. Wright*, 179 F.3d 1003, 1010-11 (6th Cir. 1999) ("Considering the dearth of case law with respect

to this provision of the Ohio wiretap statute, we cannot say that the case law in this circuit clearly established that [the defendant]'s actions violated the law."). In still another case, the Sixth Circuit held that a coroner was entitled to qualified immunity when he acted pursuant to a recently amended statute when "no court had construed the amended statute, and thus [the coroner] had no legal guidance in interpreting the plaintiffs' rights." *Brotherton v. Cleveland*, 968 F.2d 1214 (Table), 1992 WL 151286, at *3 (6th Cir. 1992). Thus, repeatedly, the Sixth Circuit has granted qualified immunity to officers tasked with implementing a statute that has not been interpreted by the highest court in the State, a federal appellate court, or the Supreme Court.

No state or federal court had interpreted the Reentry Success Act when the Board declined to reschedule Plaintiff's parole hearing. Indeed, to date, the only judicial interpretation of the Reentry Success Act has been the chancery court determination in Plaintiff's state-court action. Thus, Plaintiff cannot show that the chancery court's interpretation of the Act was clearly established at the time Defendants denied Plaintiff's request for an earlier parole hearing.

Nor can Plaintiff show any cases that clearly established that the Board's refusal to reschedule his hearing amounted to a due process violation. Instead of citing precedent that "placed the statutory or constitutional question beyond debate," *Ashcroft*, 563 U.S. at 741, Plaintiff has alleged nothing more than that abstract principles of due process were clearly established at the time of the conduct at issue. Plaintiff alleges that, in 2021, it was clearly established that (1) due process requires an opportunity to be heard at a meaningful time and in a meaningful manner; (2) when a statutory scheme creates an expectation of parole, it amounts to a liberty interest that is protected by the due process clause; and (3) the Board is required to follow the law and its own rules. (D.E. 1, PageID# 9-10, ¶¶ 40-41, 46.) These generalized statements are not sufficiently clear or particularized to Plaintiff's parole eligibility status such that "every reasonable official

would have understood that what he is doing violates the right." *Ashcroft*, 563 U.S. at 741 (internal quotations and alterations omitted).

Moreover, as recognized by the chancery court, Plaintiff's due process claims depended entirely on his interpretation of the Reentry Success Act and "whether the change in the parole eligibility process" required the Board to reschedule Plaintiff's hearing. (D.E. 1-2, PageID# 19.) But, as discussed above, his interpretation of the Act was not clearly established at the time that the Board declined to reschedule his hearing date. Plaintiff's allegations cannot show that clearly established law, particularized to the facts of this case, would put every reasonable officer on notice that Defendants' conduct violated due process. Defendants are therefore entitled to qualified immunity, and the complaint should be dismissed.

## III. The Complaint Fails to Link the Individual Defendants to Any Acts or Omissions that Would Support a Claim for Relief.

Plaintiff's allegations against the individual Board members named as Defendants in this action fail to link specific Defendants to any specific actions or omissions that support Plaintiff's claims. Plaintiff's failure to identify the role of Defendants in the alleged violations requires dismissal of the complaint for failure to state a claim for relief against these individuals. *See Wortman v. Tennessee*, No. 3:20-cv-00156, 2020 WL 1666601, at *3 (M.D. Tenn. Apr. 3, 2020) (holding that complaint that named parole board members as defendants without alleging "the personal involvement of these Defendants in the events set forth in the complaint" must be dismissed).

To state a claim under 42 U.S.C. § 1983, a plaintiff must "specify any acts or omissions by [d]efendant, or how she may have been involved in the matters that underlie [plaintiff's] claims, or how she might be involved in any injunctive or declaratory relief that may be afforded to [plaintiff]." *Murphy v. Humphreys Cnty. Juv. Ct.*, No. 3:08-1122, 2009 WL 3054024, at *5 (M.D.

Tenn. Sept. 18, 2009).  "Even though Rule 8 only requires a complaint to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' it also requires factual allegations to make a 'showing' rather than a blanket assertion of entitlement to relief."  *Herron v. Tennessee*, No. 2:19-CV-02044-TLP-TMP, 2019 WL 4145242, at *2 (W.D. Tenn. Aug. 30, 2019) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007)).  "A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation."  *Wortman*, 2020 WL 1666601, at *3.  "It is a basic pleading essential that a plaintiff must attribute factual allegations to particular defendants."  *Free v. Bonner*, No. 2:20-CV-2638-JTF-ATC, 2021 WL 3878278, at *5 (W.D. Tenn. Aug. 30, 2021).  Simply put, a "[p]laintiff must link a named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights."  *Id*.; *see also Amaro v. New Mexico*, No. 21-2039, 2021 WL 3671117, at *2 (10th Cir. Aug. 19, 2021) (plaintiff "makes almost no factual allegations of any act or omission by any individual defendant, and thus the allegations of the [c]omplaint are insufficient to state any plausible Section 1983 claim against any named individual defendant" (citations omitted)), *cert. denied*, 142 S. Ct. 1139 (2022).

Plaintiff's complaint fails to establish any such link between the alleged constitutional violation and an act or omission by Defendants.  Plaintiff only mentions Defendants as follows:

- "Each Defendant is a member of—and in privity with—the Tennessee Board of Parole . . . ."  (D.E. 1, PageID# 7.)

- "Defendant Zane Duncan is a member of the Tennessee Board of Parole who 'denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.'  Defendant Duncan is sued in his individual capacity.  Defendant Duncan may be served at his residence or wherever he may be found."  (*Id.* at PageID# 3.)

- "Defendant Gary M. Faulcon is a member of the Tennessee Board of Parole who 'denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.'  Defendant Faulcon is sued

in his individual capacity. Defendant Faulcon may be served at his residence or wherever he may be found." (*Id.*)

- "Defendant Tim Gobble is a member of the Tennessee Board of Parole who 'denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.' Defendant Gobble is sued in his individual capacity. Defendant Gobble may be served at his residence or wherever he may be found." (*Id.*)

- "Defendant Mae Beavers is a member of the Tennessee Board of Parole who 'denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.' Defendant Beavers is sued in her individual capacity. Defendant Beavers may be served at her residence or wherever she may be found." (*Id.* at PageID# 3-4)

- "Defendant Roberta Nevil Kustoff is a member of the Tennessee Board of Parole who 'denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.' Defendant Kustoff is sued in her individual capacity. Defendant Kustoff may be served at her residence or wherever she may be found." (*Id.* at PageID# 4.)

- "Defendant Barrett Rich is a member of the Tennessee Board of Parole who 'denied Mr. Hughes the opportunity to exercise his substantive rights at a meaningful time and in a meaningful manner as due process requires.' Defendant Rich is sued in his individual capacity. Defendant Rich may be served at his residence or wherever he may be found." (*Id.* at PageID# 4.)

- "the Defendants did not cause Mr. Hughes to be released on parole upon reaching his release eligibility date on September 30, 2021." (*Id.* at PageID# 6.)

- "At the time the Defendants violated Mr. Hughes constitutionally protected right to a hearing at a meaningful time and in a meaningful manner, it was clearly established 'that the Board of Parole is obligated to follow the laws of the State of Tennessee as well as its own rules, and that inmates are entitled to whatever due process arises as a result of the proper application of the state statutes and the rules.'" (*Id.* at PageID# 10.)

These allegations amount to a series of vague and repeated conclusory statements that "Defendants violated Plaintiff's rights." The only arguably specific allegation is that "Defendants did not cause Mr. Hughes to be released on parole upon reaching his release eligibility date"; however, there is no allegation establishing the individual Defendants' role in this process, or that they took any action with regards to Plaintiff's request, whether to advocate for acquiescence to the request, or for its denial.

Having failed to identify any specific acts or omissions by the named Defendants, Plaintiff's complaint fails to state a claim for individual liability against them.

## CONCLUSION

For the reasons stated, Plaintiff's complaint should be dismissed in its entirety with prejudice.

Respectfully Submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

s/ *Dean S. Atyia*
DEAN S. ATYIA BPR # 039683
Team Leader
Assistant Attorney General
CODY N. BRANDON BPR # 037504
Assistant Attorney General
Law Enforcement and
Special Prosecutions Division
Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Phone: (615) 741-1982
Fax: (615) 532-4892
Dean.Atyia@ag.tn.gov
Cody.Brandon@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2022, a true and exact copy of the foregoing was filed electronically and served via the Court's electronic filing system upon the following:

Daniel Horwitz
Lindsay Smith
Horwitz Law, PLLC
4016 Westlawn Dr
Nashville, TN 37209

<div style="margin-left: 50%;">

s/ *Dean S. Atyia*
DEAN S. ATYIA

</div>