IN THE CHANCERY COURT FOR THE TWENTIETH JUDICIAL DISTRICT
DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| JEFFREY WAYNE HUGHES, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 21-0618-II |
| TENNESSEE BOARD OF PAROLE, | ) ) ) |
| Respondent. | ) ) |

**RESPONDENT'S BRIEF IN OPPOSITION TO THE WRIT OF CERTIORARI**

Petitioner, Jeffrey Wayne Hughes, is an inmate in the custody of the Tennessee Department of Correction, currently incarcerated at the Bledsoe County Correctional Complex. He is serving a 27-year sentence on six counts of violating the Money Laundering Act of 2020 and one count of theft of property valued at $250,000 or more. On July 22, 2020, Petitioner went before the Tennessee Board of Parole (the "Board") for an initial parole hearing prior to his release eligibility date, but the Board denied Petitioner's request for parole. The Board scheduled Petitioner's next parole hearing for July 2022.

About a year later on June 21, 2021, Petitioner's attorney submitted a petition to the Board, requesting a parole hearing prior to his release eligibility date upon the newly enacted Reentry Success Act of 2021 going into effect or to release him on parole upon reaching that date. A provision of the Reentry Success Act of 2021 amended Tenn. Code Ann. § 40-35-503 to require that "notwithstanding [Tenn. Code Ann. § 40-35-503(b)[1]], there is a presumption that an eligible

---

[1] Tenn. Code Ann. § 40-35-503(b), as set forth in the Reentry Success Act of 2021, provides the following:

> (b) Release on parole is a privilege and not a right, and no inmate convicted shall be granted parole if the board finds that:

1

(1) There is a substantial risk that the incarcerated individual will not conform to the conditions of the release program;

(2)(A) The release from custody at the time would depreciate the seriousness of the crime of which the incarcerated individual stands convicted or promote disrespect for the law, except that the board's finding shall not be the sole basis for denying parole unless the individual is serving a sentence for any of the following offenses, in which case the board may deny parole for seriousness of the offense:

(i) First degree murder or an attempt to commit, solicitation of, or facilitation of first degree murder;

(ii) Second degree murder or an attempt to commit or facilitation of second degree murder;

(iii) Voluntary manslaughter;

(iv) Aggravated vehicular homicide;

(v) Vehicular homicide;

(vi) Especially aggravated kidnapping or an attempt to commit or facilitation of especially aggravated kidnapping;

(vii) Trafficking for a commercial sex act;

(viii) A human trafficking offense;

(ix) Advertising commercial sexual abuse of a minor;

(x) Especially aggravated robbery or an attempt to commit or facilitation of especially aggravated robbery;

(xi) Aggravated rape of a child or an attempt to commit or facilitation of aggravated rape of a child;

(xii) Aggravated rape or an attempt to commit or facilitation of aggravated rape;

(xiii) Rape of a child or an attempt to commit or facilitation of rape of a child;

(xiv) Rape;

(xv) Aggravated sexual battery;

(xvi) Especially aggravated burglary;

(xvii) Aggravated child abuse;

(xviii) Aggravated sexual exploitation of a minor;

inmate must be released on parole, except for good cause shown, upon the inmate reaching the inmate's release eligibility date or any subsequent parole hearing." Tenn. Code Ann. § 40-35-503(i)(1). The Reentry Success Act of 2021 became effective July 1, 2021.

Petitioner's counsel then appeared at the Board's June 23, 2021 administrative meeting and, during the public comment section of the meeting, asked the Board to provide Petitioner with a parole hearing before his release eligibility date "in compliance with the Reentry Success Act of 2021." Shortly thereafter, Petitioner's counsel was informed that Petitioner's next parole hearing is scheduled for July of 2022, and that he will receive presumptive consideration for release at that time if he meets all requirements under the new law.

Petitioner subsequently filed a Petition for Writ of Certiorari, claiming that the Board refused to provide him with a hearing prior to his release eligibility date. This Court granted the petition on July 26, 2021, prior to counsel appearing on behalf of the Board and having the opportunity to respond to the petition, and set a briefing schedule on both the Writ of Certiorari

---

(xix) Especially aggravated sexual exploitation of a minor;

(xx) Aggravated vehicular assault;

(xxi) Aggravated abuse of an elderly or vulnerable adult, or

(xxii) Vehicular assault;

(B) If the board denies parole for the seriousness of the offense, then the board shall state in writing how the inmate can improve the inmate's chances of being released on parole at the inmate's next hearing

(3) The release from custody at the time would have a substantially adverse effect on institutional discipline; or

(4) The incarcerated individual's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the incarcerated individual's capacity to lead a law-abiding life when given release status at a later time.

and the Board's anticipated motion to dismiss. On September 7, 2021, Petitioner filed a brief in support of his Petition for Writ of Certiorari and the Board filed its Motion to Dismiss the Writ of Certiorari.

In his brief on the Petition for Writ of Certiorari, Petitioner contends that the Board's July 2020 decision to deny him parole has been rendered illegal by the enactment of the Reentry Success Act of 2021. (Pet. Brief, at 5). Petitioner contends that the Board has incorrectly interpreted Tenn. Code Ann. § 40-35-503(i)(1) to not retroactively apply to prior parole decisions like the decision made to deny Petitioner parole. (*Id.*, at 7, 9). Petitioner argues that Tenn. Code Ann. § 40-35-503(i)(1) provides a constitutionally protected liberty interest to Petitioner that gives Petitioner the right to have a parole determination made "at a meaningful time and in a meaningful manner." (*Id.*, at 10). Furthermore, Petitioner contends the Board acted arbitrarily in not considering his release eligibility date in light of the requirements of the Reentry Success Act of 2021 when denying his request to have a parole hearing prior to his release eligibility date. (*Id.*, at 10-11). Specifically, Petitioner also contends that the Reentry Success Act of 2021 itself is "significant new information" that requires the Board to release Petitioner on parole upon reaching his release eligibility date or hold a hearing before then and demonstrate good cause to deny Petitioner's release. (*Id.*, at 18-19). Petitioner requests that the Board provide him with a parole hearing prior to his forthcoming release eligibility date or, alternatively, release him on parole upon reaching his release eligibility date if the Board fails to demonstrate "good cause" to deny him release at a hearing before then. (*Id.*, at 32).

The Writ of Certiorari should be dismissed because this Court lacks jurisdiction to review the Board's decision to deny Petitioner parole in July 2020 and schedule his next parole hearing for July 2022 because Petitioner did not file a petition for writ of certiorari within sixty (60) days

4

of that decision, as required by Tenn. Code Ann. 27-9-102. Even if this Court had jurisdiction to review the Board's decision to deny Petitioner parole in July 2020, the Board's decision to deny him parole was lawful under then-existing law. Additionally, this Court lacks jurisdiction under a petition for writ of certiorari to review the issues raised in Petitioner's June 2021 petition as there was no adjudicative hearing or order on the petition for the Court to review. Even if this Court had jurisdiction to review the issues raised in Petitioner's June 2021 petition, the denial of Petitioner's request for a hearing prior to his anticipated release eligibility date was lawful because the Reentry Success Act of 2021 cannot be applied retroactively to any decision to deny Petitioner parole, and Petitioner already received his statutorily mandated hearing prior to his release eligibility date. Furthermore, the Board's Rules and Regulations do not provide for reopening the decision to deny Petitioner parole based upon significant new information. For all of these reasons, the Writ of Certiorari should be dismissed and Petitioner's requested relief should be denied.

## LIMITED SCOPE OF REVIEW OF WRITS OF CERTIORARI

"The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Jackson v. Tenn. Dep't of Corr.*, No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at * 3 (Tenn. Ct. App. June 8, 2006), citing *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1988). The issuance of a writ of common law certiorari is not an adjudication of anything. *Keen v. Tenn. Dep't of Corr.,* No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008), citing *Gore v. Tenn. Dep't of Corr.,* 132 S.W.3d 369, 375 (Tenn. Ct. App. 2003). It is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." *Keen*, 2008 WL 539059 at *2 (internal citations omitted).

5

"Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently." *Jackson*, 2006 WL 1547859, at *3, citing *McCallen*, 786 S.W. at 640. "The reviewing court is not empowered 'to inquire into the intrinsic correctness of the board's decision.'" *Gordon v. Tenn. Dep't of Corr.*, No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *2 (Tenn. Ct. App. July 30, 2007), quoting *Willis v. Tenn. Dep't of Corr.,* 113 S.W.3d 706, 712 (Tenn. 2003). The reviewing court does not weigh the evidence but must uphold the lower tribunal's decision if the lower tribunal "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the [tribunal's] findings." *Jackson,* 2006 WL 1547859, at *3 (internal citations omitted). The reviewing court should "review the record to determine if there was any material and substantial evidence to support the action . . . . Such a review is actually a question of law and not of fact. . . . Therefore, . . . [the court does not] determine[] any disputed question of fact or weighs any evidence." *Gallatin Housing Auth. v. City Council, City of Gallatin*, 868 S.W.2d 278, 280 (Tenn. Ct. App. 1993) (internal citations omitted).

In a common-law writ of certiorari review, the trial court's review is normally limited to the record of the administrative proceeding below. *Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002). "Ordinarily, once the complete record has been filed, the reviewing court may proceed to determine whether the petitioner is entitled to relief without any further motions, and, if the court chooses, without a hearing. In doing so, the reviewing court may resolve any material factual disputes that may exist in the record." *Id.* "In certiorari proceedings, judicial review is generally limited to the record developed by the tribunal below, and the tribunal is generally bound by its own record." *Id.*

6

**CERTIFIED PAROLE HEARING RECORD**

On December 5, 2016, Petitioner was convicted in Lawrence County case number 2016-34049 of six counts of violating the Money Laundering Act of 1996, a Class B felony. (Administrative Record ("A.R."), at 115, 141). That same day, Petitioner was convicted in Lawrence County case number 2016-33792 of the offense of theft of property valued at $250,000 or more, a Class A felony. (*Id.*) Petitioner was sentenced to a total of 27 years in prison on the offenses and ordered to pay roughly $167,000 in restitution. (*Id.*, at 116, 141).

On July 22, 2020, Petitioner appeared before the Tennessee Board of Parole ("the Board") on his initial parole hearing after having been certified by the Tennessee Department of Correction as being eligible for a hearing. (*Id.*, at 115, 117)). At the time, Petitioner's release eligibility date was July 2022. (*Id.*, at 140). At the hearing, Petitioner was asked to testify to the details of his offenses. (*Id.*, at 131). Petitioner testified that he acted upon an opportunity for greed, taking money from the Lawrence County Fire & Rescue Board and the Crossroads Volunteer Fire Department. (*Id.*, at 131-32). Petitioner had served as a volunteer treasurer for both organizations. (*Id.*, at 132). Petitioner took the money because he was trying to keep up with the Joneses and got hung up on material things like having a better vehicle and a good cell phone. (*Id.*, at 132-33). Petitioner laundered the money he took from the organizations through WalMart gift cards, which he did approximately 80 times. (*Id.*, at 133-34). Petitioner also laundered money by writing checks to petty cash, including a check for $8,000. (*Id.*, at 134). Petitioner illegally took a total of over $265,000. (*Id.*, at 129-30).

In addition to having Petitioner testify to the details of his crimes, the hearing officer allowed into the record letters of support submitted on behalf of Petitioner and coursework he had completed. (*Id.*, at 117). Petitioner waived his right to have witnesses testify on his behalf at the

hearing.  (*Id.*)  At the conclusion of the hearing, the hearing officer indicated that he would recommend that the Board let Petitioner out of prison on early release but cautioned Petitioner that "the [B]oard may or may not do what I recommend."  (*Id.*, at 137).

On July 23, 2020, the Board made a final decision to deny Petitioner parole.  (*Id.*, at 146). The reason the Board cited for the denial was that "[t]he release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect of the law."  (*Id.*, at 140, 146).  The Board also required that Petitioner complete a comprehensive cognitive behavioral intervention program prior to being released on parole.  (*Id.*) The Board scheduled a subsequent parole hearing for Petitioner in July 2022.  (*Id.*)  Petitioner requested an appeal hearing on the Board's decision to deny him parole and schedule his next parole hearing two years later.  (*Id.*, at 419-424).  On October 21, 2020, Petitioner was informed that his request for an appeal had been denied.  (*Id.*, at 417).

On June 21, 2021, Petitioner's attorney sent a petition to the Board, requesting that the Board amend its Rules and Regulations to bring them into compliance with the newly enacted and soon to be effective Reentry Success Act of 2021.  (*Id.*, at 149-53).  Petitioner additionally requested that the Board schedule prompt parole hearing dates for inmates, including Petitioner, who qualify under the Reentry Success Act of 2021, to take place prior to the inmates' forthcoming release eligibility dates.  (*Id.*, at 151).  Petitioner alternatively requested that the Board grant all qualifying inmates, including Petitioner, release upon parole upon reaching their release eligibility dates due to "[the Board's] failure and refusal to demonstrate good cause to deny such release in accordance with the Reentry Success Act of 2021."  (*Id.*).  Petitioner further requested that the Board promptly afford Petitioner a new parole hearing under Rules and Regulations § 1100-01-01-.09(1)(d), deeming the enactment of the Reentry Success Act of 2021 to be "significant new

8

information" empowering the Board to provide Petitioner with a new parole hearing. (*Id.*, at 151-52).

As part of the petition, Petitioner's attorney attached an email exchange between himself and Rachel A. Hitt, a Staff Attorney for the Board, that occurred from May 12-13, 2021. (*Id.*, at 195-198). During that exchange, Ms. Hitt informed Petitioner's attorney that "The Reentry Success Act applies to parole determinations made on or after the effective date [of the Act]" and "does not retroactively apply" to prisoners who were previously denied parole following a hearing but "may be eligible under the Act upon reaching their review dates." (*Id.*, at 195).

Subsequently, Petitioner's attorney attended the Board's June 23, 2021 administrative meeting. (*Id.*, at 3-4, 22). During the public comment portion of the meeting, Petitioner's attorney informed the Board that he had submitted a petition on Petitioner's behalf and requested that if the Board intended to update its Rules and Regulations to comply with the Reentry Success Act of 2021, to provide Petitioner with a parole hearing before his release eligibility date "in compliance with [the Act]." (*Id.*, at 3-4). The agenda for the June 23rd administrative hearing did not include any hearing on the petition nor on Petitioner's request for a parole hearing prior to his release eligibility date. (*Id.*, at 26). Petitioner did not attend the administrative meeting. (*Id.*, at 22-24). The Board took no action on Petitioner's attorney's requests at that meeting nor indicated that it intended to consider or render a decision on the petition. (*Id.*, at 3-4).

## ARGUMENT

**I. This Court Lacks Subject-Matter Jurisdiction to Review the Board's July 2020 Decision to Deny Petitioner Parole and Schedule His Next Parole Hearing for July 2022.**

Judicial review of a final order or judgment by an administrative body like the Board is accomplished through the common law writ of certiorari. *Thandiwe v. Traughber,* 909 S.W. 2d 802, 803 (Tenn, Ct. App. 1994). In order to seek review, a petition for certiorari must be filed

9

within sixty days of the entry of the administrative body's decision. *Metz v. Metro. Gov't of Nashville and Davidson Cnty.*, 547 S.W.3d 221, 225 (Tenn. Ct. App. 2017) (citing Tenn. Code Ann. § 27–9–102 (2017)). The purpose behind the requirement that a petition for writ of certiorari be filed within sixty days of entry of a final judgment is "to promote the timely resolution of disputes by establishing filing deadlines that will keep cases moving through the system." *Id.* (quoting *Hickman v. Bd. of Paroles*, 78 S.W.3d 285, 289 (Tenn. Ct. App. 2001)). The sixty-day time limit applies equally to common law and statutory writs of certiorari. *Thandiwe*, 909 S.W.2d at 804. The sixty-day time limit is jurisdictional and the "[f]ailure to file a writ within this period precludes review of such decisions by the courts." *Id.* (quoting *Johnson v. Metropolitan Gov't for Nashville Davidson Cnty.*, 54 S.W.3d 772, 774 (Tenn. Ct. App. 2001)).

In this case, the Board denied Petitioner parole on July 23, 2020 following a hearing on the matter and set Petitioner's next parole hearing for July 2022. (A.R., at 140, 146). Petitioner requested an appeal on the decision, which was denied by the Board's Parole Administrator on October 21, 2020. (*Id.*, at 417, 419-24). Petitioner did not file his Petition for Writ of Certiorari until July 1, 2021, nearly nine months after the Parole Administrator denied Petitioner's appeal. Therefore, to the extent Petitioner challenges the Board's decision to deny him parole in July 2020 and schedule his next parole hearing for July 2022, this Court lacks jurisdiction to review the Board's decision.

**II. Even if this Court Had Subject-Matter Jurisdiction Over the Writ for Certiorari, the Board's Denial of Parole in July 2020 was Lawful and not Unfair, Arbitrary, or Capricious.**

Petitioner contends that the Board acted unfairly, arbitrarily, and capriciously be denying him parole in July 2020 based upon the stated reason of the seriousness of the offense once the

10

Reentry Success Act of 2021 became effective. (Pet. Brief, at 5). Petitioner's argument is without merit.

Under Tennessee law, an inmate's release on parole is considered to be a privilege, not a right. Tenn. Code Ann. § 40-35-503(b). Moreover,

> [p]arole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that the prisoner, if released, will live and remain at liberty without violating the law, and that the prisoner's release is not incompatible with the welfare of society.

Tenn. Code Ann. § 40-28-117. Because parole is a privilege, "a system of parole . . . does not . . . create for its prisoners a constitutionally protected liberty interest in being released prior to the expiration of a legally imposed sentence." *Wells v. Tenn. Bd. of Paroles*, 909 S.W.2d 826, 828 (Tn. Ct. App. 1995).

In July 2020, Tenn. Code. Ann. § 40-35-503(b)(2) compelled the Board to deny an inmate parole "if the Board finds that: . . (2) granting parole would depreciate the seriousness of the offense of the crime of which the defendant stands convicted or promote disrespect for the law." *Id.* § 40-35-503(b) (2019 ). In *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478 (Tenn. 1997), the Tennessee Supreme Court held that it is proper for the Board to consider the high risk to reoffend and the seriousness of an inmate's offense during parole consideration:

> In our view, consideration of the seriousness of the offense, the number of victims, and the risk to reoffend is appropriate to the parole decision. Consideration of these factors does not demonstrate that the Board acted illegally, fraudulently, arbitrarily, or in excess of its jurisdiction. Moreover, consideration of such factors does not implicate any constitutional right under the circumstances.

11

*Id.* at 482-83; *see also Turner v. Tenn. Bd. of Paroles*, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999); *Robinson v. Traughber*, 13 S.W.3d 361, 363 (Tenn. Ct. App. 1999).

Petitioner argues that the Board's denial of parole in July 2020 "rested upon grounds that the Reentry Success Act of 2021 has since rendered illegal." (Pet. Brief, at 5). However, the Reentry Success Act of 2021 was not in existence at the time the Board denied Petitioner parole. The relevant question is what law the Board was required to apply at the time it rendered its parole decision. Pursuant to *Arnold* and Tennessee law, the Board was required to consider the seriousness of Petitioner's offense; it was a proper and necessary ground for a denial of parole. *Arnold*, 956 S.W.2d at 482; Tenn. Code Ann. 40-35-503(b)(2) (2019).

The Board's July 2020 decision to deny parole based upon seriousness of the offense is supported by evidence in the hearing transcript in this case. Petitioner stole $265,000 from a Fire and Rescue Board and a volunteer fire department when Petitioner was in a trusted position as the treasurer for both organizations. (A.R., at 129-32). Petitioner laundered his ill-begotten gains over 80 times. (*Id.*, at 133-34). As of his July 2020 parole hearing, Petitioner had only served three and a half years of his 27-year sentence. (*Id.*, at 116, 140-41). Stealing $265,000 from multiple organizations when acting in a position of trust and laundering the proceeds a substantial number of times to conceal their origin is unquestionably a serious crime. The Board's final decision to deny parole based on the seriousness of the offense was proper pursuant to Tenn. Code Ann. § 40-35-503 (b) and *Arnold*. Accordingly, the Board did not act illegally in denying Petitioner parole in July 2020.

### III. The Court Does Not Have Writ of Certiorari Jurisdiction Over the Issues Raised by Petitioner's June 2021 Petition.

"Whether a prisoner should be granted parole is a decision entrusted to the Board, not the courts." *Phifer v. Tenn. Bd. of Parole*, No. M2000-01509-COA-R3-CV, 2002 WL 31443204, at

12

*3 (Tenn. Ct. App. Nov. 1, 2002). Prisoners who are dissatisfied with the Board's decisions may obtain judicial review of the decisions through a petition for common law writ of certiorari. *Id.*; *see also Garrett v. Tenn. Bd. of Parole*, No. M2019-01742-COA-R3-CV, 2021 WL 2556643, at *2 (Tenn. Ct. App. June 22, 2021) (stating that a writ of certiorari is the "procedural vehicle through which prisoners may seek review of decisions by . . . parole eligibility review boards . . . .") (internal citation omitted). The first step in the "parole decision process" is a hearing before a designated Board member or hearing officer to determine whether a prisoner should be released on parole. *Arnold v. Tenn. Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997).

In this case, no adjudicatory hearing was held nor any order issued that would constitute a "parole decision" that is subject to judicial review through a writ of certiorari. On June 21, 2021, Petitioner's attorney sent a petition to the Board, requesting that the Board amend its Rules and Regulations to bring them into compliance with the newly enacted and soon to be effective Reentry Success Act of 2021. (A.R., at 149-50). Petitioner additionally requested that the Board schedule prompt parole hearing dates for inmates, including Petitioner, who qualify under the Reentry Success Act of 2021, to take place prior to the inmates' forthcoming release eligibility dates. (*Id.*, at 151). Petitioner alternatively requested that the Board grant all qualifying inmates, including Petitioner, release upon parole upon reaching their release eligibility dates due to "[the Board's] failure and refusal to demonstrate good cause to deny such release in accordance with the Reentry Success Act of 2021." (*Id.*).

When Petitioner's attorney appeared at the Board's June 23, 2021 administrative meeting to discuss this petition, nothing about the meeting indicates that it was an adjudicatory hearing on a parole decision. The Board's agenda for the meeting contained no mention of the petition. (*Id.*, at 3, 26). Petitioner did not appear or testify at the meeting. (*Id.*, at 3-4, 22-24). Petitioner's

13

attorney addressed the petition with the Board during the public comment portion of the meeting. (*Id.*, at 3-4). The Board took no action on the petition at that meeting nor indicated that it intended to consider or render a decision on the petition. (*Id.*, at 3-4). Nor is there anything in the record showing that an official decision was made by the Board on the petition, unlike the documentation generated when the Board decided to deny Petitioner parole in July 2020. (*See id.*, at 140, 146). Nothing about the June 23, 2021 administrative meeting or any event that occurred thereafter constitutes a "parole decision" that provides this Court with writ of certiorari jurisdiction to review the issues raised in the June 2021 petition.

Petitioner contends that the Board's position on scheduling a parole hearing for Petitioner prior to his release eligibility date is that 1) Tenn. Code Ann. § 40-35-503(i)(1) only becomes effective for qualifying inmates upon their next scheduled parole hearing and 2) "the Board does not have the ability or resources necessary to identify and reconsider all of [the parole denial decisions that occurred prior to enactment of the Reentry Success Act of 2021) . . . ." (Pet. Brief, at 16-17). This statement originated from the email exchange between the Board's Staff Attorney, Ms. Hitt, and Petitioner's attorney on May 12-13, 2021. (A.R., at 195-198). Ms. Hitt is not a Board member. (*Id.*, at 140). Nor did the statement occur after the submission of the petition to the Board. (*Id.*, at 149). The email exchange between Ms. Hitt and Petitioner's attorney clearly is not a parole decision that provides this Court with jurisdiction to review under a writ of certiorari.

Petitioner further contends that the Board "summarily denied" the petition "without even mentioning the Reentry Success Act of 2021" in a June 24-25, 2021 email exchange that was not included in the Administrative Record. (Pet. Brief, at 20; Petition for Writ of Certiorari ("Pet."), at Ex. 2). The June 24-25 emails are not subject to this Court's review as they are not part of the record. *See Jeffries v. Tenn. Dep't of Corr.*, 108 S.W.3d 862, 868 (Tenn. Ct. App. 2002) (stating

14

that the trial court's review is normally limited to the record of the administrative proceeding below in a common law writ of certiorari review). Nor has Petitioner filed a motion to supplement the record with the referenced email exchange.

Nevertheless, if the Court chooses to consider the emails, they are similarly not a record of the Board making a parole decision. On June 24, 2021, Petitioner's counsel emailed the Board's web email address, directing the Board and staff attorney Rachel Hitt to the June 21st petition that counsel had attached to the email. (Pet., at Ex. 2). A reply email from the Board's web email address indicated that Petitioner already had a hearing before his release eligibility date in 2020, as required by Tenn. Code Ann. § 40-35-503(d). *Id.* The reply email further stated that Petitioner's next parole hearing will be in July 2022, and that "he will receive presumptive consideration for release at that time, if he meets all the requirements under the law." *Id.* The email exchange did not indicate that the Board had conducted a vote on the petition, nor identify that a Board member was even the email's sender. *Id.* Nor is the email exchange a formal record of a decision made by the Board, unlike the documentation generated when the Board decided to deny Petitioner parole in July 2020. (*See* A.R., at 140, 146). Therefore, the June 25 email from the Board's email address is also not a parole decision that provides this Court with jurisdiction to review under a writ of certiorari.

### IV. The Reentry Success Act of 2021 Does Not Apply Retroactively to the Board's Decision to Deny Petitioner Parole in July 2020 and Does Not Provide for Two Release Eligibility Date Parole Hearings.

Generally, statutes are not given retroactive effect unless the legislature has clearly expressed an intention for the new statute to be applied retroactively. *C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 282 (Tenn. 2007) (citing *In re D.A.H.,* 142 S.W.3d 267, 273 (Tenn.2004)); *Nutt v. Champion Int'l Corp.,* 980 S.W.2d 365, 368 (Tenn. 1998). This is

especially true for amendments to existing statutes that change substantive, as opposed to procedural, matters. *C-Wood Lumber Co.*, 233 S.W.3d at 282. When asked to determine whether statutory amendments should be applied retroactively, courts may look to the legislative history of the statute generally and in particular to the legislative intent, if any, regarding retroactivity. *Id.* (internal citation omitted).

In this case, the Tennessee General Assembly expressed a clear intent that all amendments made to Tenn. Code Ann. § 40-35-503, including the creation of a presumption of parole in subsection (b), should not apply retroactively. *See* Reentry Success Act of 2021, H.B. 785, 112th Tenn. Gen. Assemb., 1st Reg. Sess. (stating that amendments to Tenn. Code. Ann. § 40-35-503 "apply to parole determinations made on or after" July 1, 2021). That clear intent is even expressed in the June 21st petition submitted to the Board as Petitioner's attorney attached the new law to the petition. (A.R., at 190). Since the Board decided to deny Petitioner parole prior to the July 1, 2021, the effective date of the Reentry Success Act of 2021, Petitioner was not entitled to a presumption of parole.

A release eligibility date is the earliest date that an inmate convicted of a felony is eligible for parole. *Stewart v. Schofield*, 368 S.W.3d 456, 463 (Tenn. 2012); *see also* Tenn. Code Ann. § 40-35-503(n). The Board held Petitioner's release eligibility date parole hearing on July 22, 2020, after TDOC had certified that he was eligible for a parole hearing. (A.R., at 115, 117). At the time of said parole hearing, the Board was required "to conduct a hearing within a reasonable time prior to a defendant's release eligibility date *to determine a defendant's fitness for parole*." Tenn. Code Ann. § 40-35-503(d)(1) (2019) (emphasis added). Because the Board denied Petitioner parole prior to July 1, 2021, the Board had already determined prior to the effective date of the Reentry Success Act of 2021 that Petitioner was not fit for parole on his release eligibility date.

16

The Reentry Success Act does not change the law that an inmate has one release eligibility date parole hearing. Petitioner will be entitled to the presumption of parole afforded by the Reentry Success Act at his subsequent parole hearing, scheduled for July 2022. *See* Tenn. Code Ann. § 40-35-503(i)(1). But the Reentry Success Act does not provide for nor entitle Petitioner to a second release eligibility date parole hearing. Therefore, to the extent this Court determines that the Board made a "parole decision" by not scheduling a parole hearing for Petitioner prior to his upcoming release eligibility date, the Board's decision was not arbitrary.

**V. The Board's Rules and Regulations Do Not Provide for the Reopening of the July 2020 Decision to Deny Petitioner Parole Based Upon Alleged Significant New Information.**

Petitioner's argument that the enactment of the Reentry Success Act of 2021 is "significant new information" that requires the Board to reopen its decision to deny Petitioner parole in July 2020 is without merit. Specifically, Petitioner argues that the Act itself is "significant new information" that requires the Board either to release Petitioner on parole upon reaching his release eligibility date or hold a hearing and demonstrate good cause to deny him such release before then. Pet. Brief, at 18-19.

Rule 1100-01-01-.09(d) of the Tennessee Board of Parole provides that "[u]pon receipt of significant new information, [the Board] may, on its own motion, reconsider any parole grant case prior to the release of the inmate and may reopen and advance or delay a parole date." The Rule does not apply to individuals like Petitioner who were *denied* parole. *See generally* Rule 1100-01-01-.09 (applying to instances in which parole has been granted). Therefore, the Board's Rules and Regulations do not provide authority for the Board to reopen its decision to deny Petitioner parole.

17

Case 3:22-cv-00238   Document 23-1   Filed 07/11/22   Page 17 of 18 PageID #: 170

## CONCLUSION

Respondent, Tennessee Board of Parole, respectfully requests this Court dismiss the Writ of Certiorari and deny Petitioner's requested relief.

Respectfully submitted,

HERBERT H. SLATERY, III
Attorney General and Reporter

s/ Thomas J. Aumann
THOMAS J. AUMANN, BPR #34046
Assistant Attorney General
P. O. Box 20207
Nashville, Tennessee 37202
Phone: (615) 532–2551
thomas.aumann@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify a true and exact copy of the foregoing has been sent by first-class mail, postage prepaid, on this 17th day of September, 2021, to:

Daniel A. Horwitz
Lindsay B. Smith
Horwitz Law, PLLC
4016 Westlawn Drive
Nashville, Tennessee 37209
daniel@horwitzlaw.com
lindsay@horwitzlaw.com

s/ Thomas J. Aumann
THOMAS J. AUMANN
Assistant Attorney General